UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:

HARTFORD & YORK LLC,                                    Chapter 11
                                                        Case No. 13-45563-ess

                                    Debtor.
----------------------------------------------------------------x


**MEMORANDUM DECISION ON CREDITOR STABILIS FUND II, LLC'S
MOTION TO DECLARE THE DEBTOR'S PETITION VOID *AB INITIO*, OR IN THE
ALTERNATIVE, TO DISMISS THE PETITION, AND FOR RELIEF FROM STAY**


Appearances:

Christopher A. Lynch, Esq.              Avrum J. Rosen, Esq.
Reed Smith LLP                          The Law Offices of Avrum J. Rosen, PLLC
599 Lexington Avenue                    38 New Street
New York, NY 10022                      Huntington, NY 11743
    *Attorney for Stabilis Fund II, LLC*      *Attorney for Hartford & York LLC*


Nazar Khodorovsky, Esq.                 Gabriela Cacuci, Esq.
Office of the United States Trustee     New York City Law Department
Eastern District of New York            100 Church Street, 5th Floor
United States Federal Office Building   New York, NY 10007
201 Varick Street, Suite 1006               *Attorney for the City of New York*
New York, NY 10014
    *Office of the United States Trustee*

March 13, 2014

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

## Introduction

Before the Court is the motion of Stabilis Fund II, LLC ("Stabilis") to declare the

Debtor's petition void *ab intino*, or, in the alternative, to dismiss the petition and for relief from

the automatic stay.  The City of New York has joined Stabilis' motion.  Hartford & York LLC is

the Debtor in this bankruptcy case.

The matters to be decided by the Court are:

I.      whether the Debtor's bankruptcy petition is void *ab initio* because it was filed by
        a non-attorney;

II.     whether the Court should dismiss this bankruptcy case as a bad faith filing;

III.    whether the Court should grant Stabilis relief from the automatic stay *nunc pro
        tunc* to September 12, 2013, in order to ratify the foreclosure sale held on that
        date; and

IV.     whether the Court should bar the Debtor from filing a bankruptcy petition for 120
        days following the dismissal of this case.

## Jurisdiction

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and

157(b)(1).  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(G).

## Background

Hartford & York is a corporation and single asset real estate debtor.  The Debtor's

principal asset is real property located at 614 Marlborough Road in Brooklyn (the "Property").

Some background is helpful in understanding the context of Stabilis's motion and the

relief that Stabilis seeks.  On January 29, 2009, the Debtor executed a Consolidated Mortgage

Note in favor of Madison National Bank with an original principal balance of $712,500.  To

secure the balance due under the Note, the Debtor executed a Consolidated Mortgage in favor of Madison, along with an Assignment of Leases and Rents in favor of Madison.  Stabilis is the successor in interest to Madison.

On or about August 27, 2010, Madison filed a foreclosure action against the Debtor in the Supreme Court of the State of New York, Kings County.  On September 23, 2010, that court issued an order appointing a receiver to enter into possession of and operate the Property.  On February 28, 2013, Stabilis was substituted into that action as plaintiff.

On February 28, 2013, an Amended Judgment of Foreclosure and Sale was entered by the state court, awarding Stabilis the right to foreclose on its interest in the Property in order to collect on the amounts due under the mortgage note.

Stabilis set a foreclosure sale for May 23, 2013 at 2:30 PM.  Less than an hour before the scheduled sale, at 1:40 PM, the Debtor, with the assistance of counsel, filed its first bankruptcy petition.

On June 12, 2013, Stabilis filed a Motion to Dismiss the Debtor's first bankruptcy case. One month later, on July 16, 2013, the Court held a hearing at which the Debtor, Stabilis, and the United States Trustee appeared and were heard, and the Debtor, by counsel, agreed to the dismissal of the case.  On July 25, 2013, the Court entered an Order dismissing the Debtor's first bankruptcy case on consent.

Following the dismissal of the Debtor's first bankruptcy case, Stabilis rescheduled the Foreclosure Sale for September 12, 2013, at 2:30 PM.  And at 1:54 PM on that same day, the Debtor, *pro se*, filed this Chapter 11 bankruptcy case.  The bankruptcy petition was signed by Mayer Goldberger in his capacity as president of the Debtor.

2

On September 12, 2013, Stabilis proceeded with the foreclosure sale and was declared the successful bidder.  Stabilis was notified of the bankruptcy filing after the foreclosure sale occurred.

Five creditors have filed proofs of claim in the Debtor's present bankruptcy case.  Four secured claims have been filed, by Stabilis in the amount of $1,470,966; by the New York City Water Board in the amount of $7,870; by the New York City Office of Administrative Trials and Hearings in the amount of $2,759; and by NYCTL 2013-A Trust in the amount of $21,793.  One unsecured claim has been filed, by the Internal Revenue Service in the amount of $8,823.  Viewed another way, the Stabilis claim is approximately 98 percent of the secured filed claims, and some 97 percent of the total filed claims.  That is, as the claims indicate, and as a practical matter, this bankruptcy case arises out of a two-party dispute between the Debtor and Stabilis.

The Debtor lists one asset – the Property – on Schedule A, with a value of $600,000.  The Debtor lists two entities as having unsecured nonpriority claims on Schedule F: the Internal Revenue Service in the amount of $8,823 and HealthCare Financial Services, which the Debtor describes as a debt collection agency, with a claim in an unknown amount.  The Debtor lists four unexpired leases in Schedule G, and states that "as to all leases[,] the [D]ebtor does not know if they are still in effect."  The Debtor has not filed Schedule I, showing its income, or Schedule J, showing its expenses.

## The Relief Requested

Stabilis seeks several forms of relief.  First, Stabilis seeks an order declaring the Debtor's bankruptcy petition to be void *ab initio*, because it was not filed by an attorney, in order to validate the foreclosure sale.  In the alternative, Stabilis seeks an order dismissing this

proceeding as a bad faith filing and granting it relief from the automatic stay *nunc pro tunc* to September 12, 2013, the date of the bankruptcy petition and the foreclosure sale, similarly in order to validate the foreclosure sale.  And finally, Stabilis seeks an order barring the Debtor from filing a bankruptcy petition for 120 days following dismissal of this case.

### I.  Whether the Petition Is Void *Ab Initio* Because It Was Not Filed by an Attorney

It is long and well established that a corporation may not appear in court unless it is represented by counsel.  As the Supreme Court has observed, "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."  *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993).  To the same effect, the Second Circuit has noted that "a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*."  *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983).  Similarly, in *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967), the court stated that "it is settled law that a corporation cannot appear other than by its attorney."

On September 12, 2013, Mayer Goldberger filed the pending bankruptcy petition on behalf of the Debtor.  Mr. Goldberger is the Debtor's president, and he is not an attorney.  On October 10, 2013, the Debtor, by counsel, filed an Application to Employ the Law Offices of Avrum J. Rosen and the Court granted that application by an Order entered on January 7, 2014.

Stabilis argues that because a non-attorney filed the Debtor's bankruptcy petition, this Court should declare the Debtor's petition null and void, and validate the foreclosure sale.  The Debtor acknowledges that the petition was filed by a non-attorney but notes that it retained counsel promptly thereafter.  Because the Debtor swiftly addressed and corrected the deficiency,

the Debtor argues, its Petition should not be deemed void.

It is beyond reasonable dispute that a corporation must appear by counsel in this Court. But that does not mean that a case that is filed without counsel by a corporation is a nullity. As several courts have found, even cases filed by entities that are not eligible to be debtors are subject to dismissal, rather than a declaration that they are void from the outset. And courts have reached this conclusion whether or not the entity is represented by counsel.

For example, in *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir. 1997), a single asset real estate case in which the debtor filed a Chapter 11 bankruptcy petition in response to a secured creditor's foreclosure action, the Second Circuit affirmed the *dismissal* of the bankruptcy case on grounds, among others, that the debtor – a partnership in dissolution – was ineligible to be a Chapter 11 debtor under Bankruptcy Code Section 109(d). To the same effect, in *In re Westville Distribution and Transport*, 293 B.R. 101 (Bankr. D. Conn. 2003), the bankruptcy court *dismissed* a bankruptcy case that was filed *pro se* by an entity that had no legal corporate existence.

Here, the record shows that the Debtor moved promptly to retain counsel to represent it in this bankruptcy case. Less than three weeks after this case began, the Debtor filed its application to retain counsel, and the retention of counsel was approved by this Court. The Debtor has been represented by counsel since that time, and for nearly the entire duration of this case.

Based on the entire record, the Court finds that Stabilis has not established that the Debtor's bankruptcy petition is void *ab initio*.

## II.  Whether this Bankruptcy Case Should Be Dismissed as a Bad Faith Filing

Bankruptcy Code Section 1112(b)(1) provides in part that "on request of a party in

interest, and after notice and a hearing . . . the court shall convert . . . or dismiss a case under

[Chapter 11], whichever is in the best interests of the creditors . . . for cause." 11 U.S.C.

§ 1112(b)(1). The requirement that a debtor file a case under Chapter 11 in good faith is implicit

in Bankruptcy Code Section 1112(b), and "'it is well established that bad faith may serve as a

ground for dismissal of a bankruptcy petition.'" *In re GEL, LLC*, 495 B.R. 240, 246 (Bankr.

E.D.N.Y. 2012) (quoting *In re Island Helicopters, Inc.*, 211 B.R. 453, 461 (Bankr. E.D.N.Y.

1997)). As one Court of Appeals has observed, "a good faith filing requirement is implicit in

several specific provisions of the bankruptcy code, interpreted in light of established policy

considerations underlying the code's provision of bankruptcy protection." *Carolin Corp. v.*

*Miller*, 886 F.2d 693, 698 (4th Cir. 1989).

The Second Circuit endorsed the principle that a Chapter 11 case can be dismissed as a

bad faith filing in *C-TC 9th Avenue Partnership v. Norton Co. (In re C-TC 9th Avenue*

*Partnership)*, 113 F.3d 1304 (2d Cir. 1997). As noted above, *C-TC Ninth Avenue* was a single

asset real estate case in which the debtor filed a Chapter 11 bankruptcy petition in response to a

secured creditor's foreclosure action. The court held that the bankruptcy court did not abuse its

discretion in dismissing the case where "on the filing date there was no reasonable likelihood that

the debtor intended to reorganize and no reasonable probability that it would eventually emerge

from bankruptcy proceedings." *C-TC 9th Ave. P'ship*, 113 F.3d at 1309-10.

In *C-TC 9th Avenue*, the Second Circuit identified eight factors that tend to indicate that a

debtor does not have a genuine intent to reorganize or a reasonable prospect of emerging

successfully from bankruptcy, as follows:

(1)     the debtor has only one asset;

6

(2)    the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3)    the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)    the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5)    the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)    the debtor has little or no cash flow;

(7)    the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8)    the debtor has no employees.

*In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (citation omitted). These factors guide courts in considering the question of whether a bankruptcy case has been filed in good faith, and assist courts in assessing the totality of the circumstances. Depending on the situation, one or another factor may have greater weight, and the number of factors on one side or the other of the balance is not, standing alone, determinative of the outcome.

Stabilis argues that here, all eight of the *C-TC 9th Avenue* factors are present. Stabilis urges that for these reasons, this Court should conclude that the Debtor filed this bankruptcy case in bad faith, and the case should be dismissed. The Debtor responds that the circumstances here, taken as a whole, show that it seeks in good faith to reorganize.

An examination of the record in light of the *C-TC 9th Avenue* factors guides and assists the Court's analysis.

*Whether the Debtor has only one asset*

7

The first *C-TC 9th Avenue* factor is whether the Debtor has only one asset.

Here, the record shows that the Debtor's primary asset is the Property.  The Debtor's bankruptcy case is a single asset real estate case within the meaning of Section 101(51B), and as that Section states:

> The term "single asset real estate"  means real property constituting a single property or project, other than residential real property with fewer than [four] residential units, which generates substantially all of the gross income of a debtor . . . and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C. § 101(51B).

Accordingly, this factor supports the conclusion that this case was not filed in good faith.

*Whether the Debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors*

The second *C-TC 9th Avenue* factor is whether the Debtor has few unsecured creditors, with claims that are small in relation to the claims of the secured creditors.

Here, the record shows that five proofs of claim have been filed, and that just one of these was filed by an unsecured creditor.  That claim, in the amount of $8,823, was filed by the Internal Revenue Service.  By contrast, the remaining proofs of claim, all filed as secured claims, total $1,503,387, and of that amount, nearly 98 percent is attributable to Stabilis, which holds a secured claim of $1,470,966.

Accordingly, this factor supports the conclusion that this case was not filed in good faith.

*Whether the Debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt*

The third *C-TC 9th Avenue* factor is whether the Debtor's principal asset is the subject of a foreclosure action as a result of arrearages or default on the debt.

8

Here, the record shows that the Debtor's property is the subject of a mortgage foreclosure action that arises from the Debtor's default on the mortgage.  The record also shows that Stabilis had commenced, and nearly completed, foreclosure proceedings when this bankruptcy case was filed.  As described above, the Debtor filed the petition commencing this bankruptcy case on the same day that Stabilis scheduled a foreclosure sale of the Property, and the Debtor did so just 36 minutes before the foreclosure sale was scheduled to occur.

Accordingly, this factor supports the conclusion that this case was not filed in good faith.

*Whether the Debtor's financial condition is, in essence, a two party dispute between the Debtor and secured creditors which can be resolved in the pending state foreclosure action*

The fourth *C-TC 9th Avenue* factor is whether the Debtor's financial situation is, in essence, a two-party dispute between the Debtor and secured creditors which can be resolved in a pending foreclosure action.

Here, the record shows that the Debtor's financial difficulties relate principally to a dispute between the Debtor and Stabilis arising from the Debtor's default on the mortgage.  The record also shows that these matters were the subject of a foreclosure action brought by Stabilis that was resolved in state court by entry of a judgment of foreclosure, and that Stabilis has attempted to enforce its rights under that judgment by scheduling a foreclosure sale on two occasions.  This is, in essence, a foreclosure dispute between the Debtor and Stabilis.

Accordingly, this factor supports the conclusion that this case was not filed in good faith.

*Whether the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights*

The fifth *C-TC 9th Avenue* factor is whether the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce

their rights.

Here, the record shows that the Debtor filed for Chapter 11 relief less than one hour before the Property was scheduled to be sold in a court-ordered foreclosure sale. The timing is consistent with the conclusion that the Debtor commenced this Chapter 11 bankruptcy case in order to delay that foreclosure sale and to frustrate the legitimate efforts of Stabilis to enforce its rights.

Accordingly, this factor supports the conclusion that this case was not filed in good faith.

*Whether the Debtor has little or no cash flow*

The sixth *C-TC 9th Avenue* factor is whether the Debtor has little or no cash flow.

Here, the record shows that income from the Property has been decreasing over the past two years, and is not sufficient to pay its current expenses, including real estate taxes and basic utilities.

The record, including operating statements prepared by the receiver and filed by Stabilis, shows that from October 2010 to December 2010, the Property's operations generated negative cash flow. According to those operating statements, the Property yielded $2,368 in rent and incurred $3,123 in expenses during that time. By contrast, the record, including the receiver's operating statements, shows that in 2011, the Property generated positive cash flow. Those operating statements state that the Property yielded $44,329 in rent and incurred $36,468 in expenses in 2011.

But one year later, in 2012, the record, including the receiver's operating statements, shows that again, the net cash flow from the Property's operations was negative. The Property yielded $41,783 in rent and incurred some $70,954 in expenses in 2012. That is, the record

10

shows that based on the Property's operating income and expenses, the Debtor does not have sufficient consistent operating income to pay its expenses, and has little or no positive cash flow.

Accordingly, this factor supports the conclusion that this case was not filed in good faith.

*Whether the Debtor cannot meet current expenses including the payment of personal property and real estate taxes*

The seventh *C-TC 9th Avenue* factor is whether the Debtor cannot meet its current expenses, including the payment of personal property and real estate taxes.

Here, as described above, the record, including the receiver's operating statements, indicates that the Property did not generate sufficient operating income on a consistent basis to pay its real estate taxes. The record also suggests that many Environmental Control Board violations were not remedied, and that the Property was not maintained in accordance with the requirements of New York City's housing laws.

Accordingly, this factor supports the conclusion that this case was not filed in good faith.

*Whether the Debtor has no employees.*

The eighth *C-TC 9th Avenue* factor is whether the Debtor has any employees.

Here, the record shows that the Debtor has one part-time employee, a superintendent who does not live at the Property.

Accordingly, this factor supports the conclusion that this case was not filed in good faith.

*                *                *

In summary, each of the *C-TC 9th Avenue* factors lends support to the conclusion that this Chapter 11 bankruptcy case was not filed in good faith. In addition, the record of this case over the six months that it has been pending in this Court, and the present status of the case, do not

show significant progress toward a successful reorganization.  For these reasons, and based on the entire record, the Court concludes that this case was filed in bad faith and should be dismissed.

### III.  Whether Stabilis Is Entitled to *Nunc Pro Tunc* Relief from the Automatic Stay

When a bankruptcy case is filed, the automatic stay "is effective immediately upon the filing of the petition . . . and 'any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect.'"  *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (quoting *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied sub nom. Rockefeller Grp., Inc. v. 48th Street Steakhouse, Inc.*, 485 U.S. 1035 (1988)).

In the Second Circuit, actions taken in violation of the automatic stay generally are held to be void *ab initio*.  *In re Ebadi*, 448 B.R. 308, 313 (Bankr. E.D.N.Y. 2011) (citing *Rexnord Holdings,* 21 F.3d at 527 and *48th St. Steakhouse*, 835 F.2d at 431); *In re Olejnik*, 2010 WL 4366183, at *5 (Bankr. E.D.N.Y. Oct. 28, 2010) (citing *Rexnord* and *48th Street Steakhouse*).  As the bankruptcy court observed in *In re Ebadi*, a foreclosure sale must be vacated where it had been accomplished in violation of the automatic stay "even if the violation were done unknowingly."  *In re Ebadi*, 448 B.R. at 313 (internal citations omitted).

Some courts have held that a bankruptcy court may retroactively lift or annul the automatic stay.  For example, in *In re Bresler*, 119 B.R. 400 (Bankr. E.D.N.Y. 1990), the court found that Section 362(d) empowers the court "to lift the stay as of the date of the sale, in essence annulling the stay."  *In re Bresler*, 119 B.R. at 404.  The court denied reconsideration of its order granting *nunc pro tunc* stay relief and declaring a foreclosure sale voidable, not void,

12

where the Chapter 11 debtor lacked equity in the property, the property was not necessary to an effective reorganization, the movant was an individual who was not adequately protected because real estate taxes on the property were unpaid and mounting, the sale was conducted in a commercially reasonable manner, and a closing had been held and title to the property was transferred prior to the hearing on the motion for reconsideration.

But *Bresler* was decided before the Second Circuit decided the *Rexnord* case. That decision is controlling in this Circuit, and states that actions taken in violation of the automatic stay "are void and without vitality." *Rexnord*, 21 F.3d at 527. Other courts have reached similar conclusions. *See, e.g.*, *In re Adler*, 494 B.R. 43, 58 (Bankr. E.D.N.Y. 2013) (holding that an order entered post-petition by a state court was void); *In re Adomah*, 340 B.R. 453, 458 (Bankr. S.D.N.Y. 2006) (holding that a creditor's position that its post-petition conduct was not in violation of the automatic stay and, therefore, not void, was "flat wrong").

It is plain from the record that the Debtor filed this bankruptcy case less than one hour before the foreclosure sale was scheduled to occur. As noted above, applying the considerations set forth by the Second Circuit in *C-TC 9th Avenue*, this circumstance weighs in favor of the dismissal of this bankruptcy case. But applying the rule set forth by the Second Circuit in *Rexnord*, this does not provide a basis to nullify the foreclosure sale. For these reasons, and based on the entire record, the Court concludes that Stabilis is not entitled to *nunc pro tunc* relief from the automatic stay.

### IV.  Whether the Debtor Should Be Barred from Refiling for 120 Days

Bankruptcy Code Section 105(a) permits this Court to issue any order, process or judgment which is necessary or appropriate to prevent abuse of the bankruptcy system. 11

13

U.S.C. § 105(a).  At the same time, as the Supreme Court has recently noted, "[w]e have long

held that 'whatever equitable powers remain in the bankruptcy courts must and can only be

exercised within the confines of' the Bankruptcy Code.'"  *Law v. Siegel*, 571 U.S. ___, No. 12-

5196, slip op. at 6, 2014 WL 813702 at *5 (Mar. 4, 2014) (quoting *Norwest Bank Worthington v.*

*Ahlers*, 497 U.S. 197, 206 (1988)).

The Second Circuit recognizes that Section 105(a) grants bankruptcy courts the authority

to impose a temporary bar to refiling.  *In re Casse*, 198 F.3d 327, 337 (2d Cir. 1999).  As one

respected treatise states, "[b]ankruptcy courts have, on occasion, enjoined the filing of a

[subsequent] petition for a period of time, usually six months, when it was clear that the debtor

was trying to circumvent the attempts of creditors to modify the automatic stay in the original

case." *Collier on Bankruptcy* ¶ 349.02 at p. 349-10 (Alan N. Resnick & Henry J. Sommer eds.,

16th ed. 2013).

Here, Stabilis requests that this Court bar the Debtor from filing a bankruptcy petition for

120 days following the dismissal of this case.  Because the Debtor has demonstrated a

willingness to abuse the Bankruptcy Code by filing this case in bad faith, and because the Debtor

has used the bankruptcy process to delay and frustrate the legitimate efforts of Stabilis to enforce

its rights, some form of prospective relief is warranted.

At the same time, the reorganization purposes and objectives of the Bankruptcy Code

would be frustrated if the door to the courthouse could be barred without remedy.  The

bankruptcy process aims to offer a fresh start to the debtor who seeks the benefits and bears the

burdens of the process.  It is difficult to predict with certainty whether a debtor will be absolutely

incapable of filing and pursuing a bankruptcy case in good faith following the dismissal of one –

14

or even two – unsuccessful cases.

For these reasons, and based on the entire record, the Court concludes that if the Debtor files a bankruptcy case in the 120 days following the dismissal of this case, the automatic stay shall not come into effect upon the filing of the later case unless, after notice and a hearing, the court determines that the later case is filed in good faith as to the creditors to be stayed.

## <u>Conclusion</u>

Based on the entire record, and for the reasons stated herein, the Motion of Stabilis to declare the Debtor's petition void *ab inito* or, in the alternative, to dismiss the petition, and for relief from the automatic stay, is granted to the extent that (i) the Debtor's bankruptcy case is dismissed, and (ii) if the Debtor files a bankruptcy case in the 120 days following the dismissal of this case, the automatic stay shall not come into effect upon the filing of the later case unless, after notice and a hearing, the Court determines that the later case is filed in good faith as to the creditors to be stayed.  In all other respects, the Motion is denied.

An order in accordance with this Memorandum Decision will be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**March 13, 2014**

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**